**E-FILED**
Monday, 26 June, 2006  09:54:03 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JAMES RODGERS,
　Plaintiff,


　vs.                                          No. 04-1347


ROGER WALKER,  et al
　Defendants

ORDER

This cause is before the court for consideration of the defendants' motions for summary judgement. [d/e 55, 58]

FACTS

The plaintiff filed his lawsuit pursuant to 42 U.S.C. §1983 against three defendants including Illinois Department of Corrections Director Roger Walker, Illinois Department of Corrections Medical Director Dr. Willard Elyan, and Pontiac Correctional Center Medical Director Dr. Faisal Ahmed.  The plaintiff says the defendants violated his Eighth Amendment rights when they were deliberately indifferent to his serious medical condition.

The following facts are taken from the defendants motions for summary judgements and the plaintiff's response:

The plaintiff has a history of significant congenital heart disease.  In 2000, the plaintiff received an artificial heart valve. The plaintiff has provided a letter for Pediatric Cardiologist David Thoele dated June of 2002 which was sent to doctors at Pontiac Correctional Center.   Dr. Thoele states:

> I feel that it is very important from a medical viewpoint that he have a
> minimum of a once-a-year followup with either an Adult Congenital
> Clinic or a Pediatric Cardiologist.  The type of surgery he had is not
> a permanent solution, and it is clear that all patients who have this
> type of repair need to be followed at least on a yearly basis, if not on an
> every-six-month basis, since such values eventually always calcify, and
> sometimes become insufficient.  They can last anywhere from one to
> about 20 years, and if it is functioning well, he should have a reasonably
> good prognosis.  It is, however, extremely important that he have followup
> medical care on a yearly basis. (Pl. Ex. P. 6)

The plaintiff was seen by Cardiac Specialist, Dr. Carlos Ruiz,  in June of 2003 while he was incarcerated at Stateville Correctional Center.   Dr. Ruiz also sent a letter to doctors at

Stateville Correctional Center.  Dr. Ruiz states that he would like to see the plaintiff for a follow-up in approximately six months. (Pl. Ex.#2).  The plaintiff was then transferred to Menard Correctional Center in August of 2003 and remained there for approximately one year.

Defendant Dr. Faisal Ahmed was Medical Director at the Menard Correctional Center. Dr. Ahmed conducted a complete review of the plaintiff's cardiac status when he was transferred to Menard.  The doctor was aware that the plaintiff was seen by a cardiac specialist the month before.  This specialist had conducted an echocardiogram and recommended certain medication for the plaintiff.   Dr. Ahmed ordered the prescription for the plaintiff.

Dr. Ahmed says there were no procedures pending for the plaintiff, nor was there need for any follow-up care with a cardiologist.  The plaintiff was placed on the cardiac chronic clinic list to be examined every four months.

The plaintiff was again seen in the cardiac clinic on November 21, 2003.  The plaintiff "had good control of his blood pressure and was not in notable distress." (Dr. Ahmed Aff., p. 2). Dr. Ahmed says he reviewed the medical record of this examination.

Dr. Ahmed states that he noted the patent had a routine follow-up scheduled at the University of Illinois at Chicago.  However, Dr.Ahmed says he believes the doctors who made the suggestion were under the impression that the patient was still incarcerated in Stateville Correctional Center near Joliet, not in Menard Correctional Center in Southern Illinois.  "In my medical judgement, Mr. Rodgers could have been seen by a local cardiac physician if needed. As of January 21, 2004, Mr. Rodgers did not appear to be in need of an immediate referral to a cardiac specialist." (Dr. Ahmed Aff.,p. 3)

On February 24, 2004, the plaintiff was scheduled for blood work, but he refused the blood work and an EKG.

On March 23, 2004, the plaintiff was against seen in the cardiac chronic clinic.  The plaintiff admitted he had refused the earlier testing and demanded to see a cardiologist because he believed he needed to be examined by a specialist.   The plaintiff was warned that he was putting himself in jeopardy if he refused the testing and the plaintiff agreed to cooperate.

The plaintiff was seen again in the cardiac chronic clinic on July 19, 1004.  Dr. Ahmed states there were no findings noted that indicated the plaintiff was in need of an immediate transfer to see a cardiologist.   Dr. Ahmed says he knew the plaintiff would be transferred to Pontiac Correctional Center in one month, and he believed that any future follow-up care could be coordinated with the University of Illinois at Chicago from that facility if necessary.

The plaintiff was in fact referred back to the University of Illinois at Chicago for a follow up visit on November 17, 2004.  No significant modifications were made to the plaintiff's care and treatment.   The plaintiff went back for another visit on August 25, 2005.  Again, Dr. Ahmed says there were no major changes noted with the plaintiff.  One prescription was cancelled and

the plaintiff was told to take an aspirin daily.

Dr. Ahmed says there are no medical records which demonstrate the plaintiff "suffered any pain and suffering, nor what he will suffer any adverse effects as a result of the care and treatment complained of in this complaint." (Dr. Ahmed Aff., p. 5)

Currently, the only medication the plaintiff is taking is aspirin.  The plaintiff says he can engage in cardiovascular exercise such as jogging, sit-ups and push-ups.   The plaintiff says he does cardiovascular exercises about three times a week.  The plaintiff says he has no complaints about his current care.

The plaintiff did file a grievance concerning his desire to be examined by a cardiac specialist at Menard Correctional Center.  The grievance was denied.   Although the signature of the Director of the Illinois Department of Corrections appears on the denial, it was signed by his designee, Nancy Tucker.    Rodger Walker states that he doe not deal with individual grievances and has no knowledge of this plaintiff.

Defendant Dr. Willard Elyea is the Medical Director for the Illinois Department of Corrections.  The plaintiff has never met spoken to Dr. Elyea nor has he met Dr. Elyea.  The plaintiff named Dr. Elyea as a defendant because the letter the plaintiff received from the Administrative Review Board stated that a copy of the plaintiff's grievance would be provided to Dr. Elyea for review and handling as appropriate.  The plaintiff heard nothing in response from Dr. Elyea.

## LEGAL STANDARD

The entry of summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(C).  A "material fact" is one that "might affect the outcome of the suit."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine only if a reasonable jury could find for the nonmoving party.  Id.

A party moving for summary judgment initially has the burden of showing the absence of any genuine issue of material fact in evidence of record.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 153 (1970);   Schroeder v. Barth, Inc., 969 F.2d 421, 423 (7th Cir. 1992).  A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position.   Tolle v. Carroll Touch, Inc., 23 F.3d 174, 178 (7th Cir. 1994).  "Summary judgement is not a discretionary remedy.  If the plaintiff lacks enough evidence, summary judgement must be granted." Jones v. Johnson, 26 F.3d 727, 728 (7th Cir. 1994).

## ANALYSIS

The defendants successfully argue that the plaintiff has failed to demonstrate a violation

of his Eighth Amendment rights.   The plaintiff alleges that the defendants violated his constitutional rights when they failed to follow the treatment plan specified by a cardiac specialist, and failed to allow him to be examined by a cardiac specialist every six months.

The plaintiff must pass both an objective and a subjective test in order to establish that the lack of appropriate medical care violated the Eighth Amendment. Rhodes v. Chapman, 452 U.S. 337, 346 (1981); Wilson v. Seiter, 501 U.S. 294, 297 (1991).  The plaintiff must first demonstrate that the alleged deprivation was sufficiently serious. Id.   The plaintiff must also show that the Defendants acted with deliberate indifference.    Farmer v. Brennan, 511 U.S. 825, 828 (1994).   "[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." Mathis v. Fairman, 120 F.3d 88, 91 (7th Cir. 1997)(citing Farmer at 840-42).

Allegations of negligence or medical malpractice do not state an Eighth Amendment claim. Ford v. Page, 2001 WL 456427, at 6 (N.D.Ill. April 27, 2001).  However, "proof of deliberate indifference may be found where a prison official intentionally denies or delays access to medical care or intentionally interferes with the treatment once prescribed. Amendment claim." Jones,151 F.Supp.2d at 945 *citing* Ford, 2001 WL 456427 at 6.   A delay in scheduling an appointment for medical treatment may constitute deliberate indifference, *see*  Jones v. Simek, 193 F.3d 485, 490-491 (7th Cir. 1999); but the inmate must support his claim with "verifying medical evidence" to establish that the delay detrimentally affected him, *see* Langston v Peters, 100 F.3d 1235, 1240 (7th Cir. 1996).

In the case before the court, the plaintiff first alleges that he was to be examined by cardiac specialists every six months.  However, the court notes that Dr. Thoele does not require exams every six months, but instead says the plaintiff should be seen once a year at a minimum. (Plain. Ex. 6).   Nonetheless, Dr. Cruz does state that he would like to conduct a follow up examination in six months.

The plaintiff was transferred, and in Dr. Ahmed's medical judgement, the plaintiff did not need to be seen so quickly.  The plaintiff's condition was monitored on a regular basis and the plaintiff was in fact evaluated at the University of Illinois at Chicago in June of 2003, June of 2004,  August of 2005, and February of 2006.  The plaintiff has not presented any evidence of deliberate indifference.

More importantly, the plaintiff has not demonstrated that the delay in scheduling appointments with a cardiac specialist detrimentally affected him as is required to establish a violation of his constitutional rights. Langston, 100 F.3d at 1240.

The court also notes that the plaintiff has not established that either Dr. Willard Elyan or Roger Walker had personal knowledge or involvement in his claims.  The motions for summary judgement are granted.

**IT IS THEREFORE ORDERED that:**

**1) The defendants  motions for summary judgement is granted pursuant to Fed. R. Civ. P. 56. [d/e 55, 58]  The Clerk of the Court is directed to enter judgment in favor of the defendants in accordance with this order.  The parties are to bear their own costs.  This case is terminated.**

**2) The agency having custody of the plaintiff is directed to remit the docketing fee of $150.00 from the plaintiff's prison trust fund account if such funds are available.  If the plaintiff does not have $150.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $150.00 is paid in its entirety.  The filing fee collected shall not exceed the statutory filing fee of $150.00.**

**3) The plaintiff is responsible for ensuring the $150.00 filing fee is paid to the clerk of the court even though his case has been dismissed.  Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full.  The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such change.**

**4)  The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.**

Enter this 26th day of June, 2006

**s\Harold A. Baker**

_____

HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE